# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| In re *Ex Parte* Application of THE ISLAMIC REPUBLIC OF PAKISTAN for an Order Permitting Discovery Pursuant to 28 U.S.C. § 1782 | ) ) ) ) ) ) ) ) |

Case No. 18-mc-103-RMC

## [AMENDED] *EX PARTE* APPLICATION FOR AN ORDER PERMITTING DISCOVERY PURSUANT TO 28 U.S.C. § 1782 AND SUPPORTING <u>MEMORANDUM OF LAW</u>

## Cases

*Coon v. Wood*, 160 F. Supp. 3d 246 (D.D.C. 2016) .................................................... 12

*In re Application of Caratube Int'l Oil Co.*, *LLP*, 730 F. Supp. 2d 101 (D.D.C. 2010).............. 12

*In re Application of Chevron Corp.*, 709 F. Supp. 2d 283 (S.D.N.Y. 2010) ..................... 9, 10, 12

*In re Barnwell Enterprises Ltd.*, 2017 WL 2992074 (D.D.C. July 17, 2017) ..................... 7, 8, 10

*In re Letter of Request from Crown Proseuction Service of United Kingdom*, 870 F.2d 686 (D.C. Cir. 1989) ........................................................................................................ 9, 10

*In re Republic of Kazakhstan for an Order Directing Discovery from Clyde & Co. LLP Pursuant to 28 U.S.C. § 1782*, 110 F. Supp. 512 (S.D.N.Y. 2015) ......................................... 8

*In re Veiga*, 746 F. Supp. 2d 8 (D.D.C. 2010).............................................................. passim

*Intel Corporation v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) ........................... passim

*Lazaridis v. International Centre for Missing and Exploited Children, Inc.*, 760 F. Supp. 2d 109 (D.D.C. 2011)........................................................................................................ 7

## Statutes

28 U.S.C. § 1782 ............................................................................................... 2, 6, 7

## Other Authorities

ICSID Convention ............................................................................................... 10, 11

## Exhibits

Exhibit A: *Karkey Karadeniz Elektrik Uretim A.S. v. Pakistan*, Award, ICSID Case No. ARB/13/1

Exhibit B: Asian Development Bank, *Islamic Republic of Pakistan: Rental Power Review*

Exhibit C: *Letter from Transparency Int'l to the Chief Justice of the Supreme Court of Pakistan*

Exhibit D: Supreme Court Judgment, Human Rights Case No. 7734-G/2009 & 1003-G/2010

Exhibit E: *Letter from NAB to the Maritime Security Agency*

Exhibit F: *Deed between the National Accountability Bureau and Karkey* [confidential]

Exhibit G: Supreme Court Order, C.M.A Nos. 3685-3686 in Human Rights Case No. 7734-G/2009

Exhibit H: Supreme Court Order, C.M.A Nos. 3685-3686 in Human Rights Case No. 7734-G/2009

Exhibit I: Request for Annulment

Exhibit J: *CMS Gas Transmission Company v. Argentine Republic*, ICSID Case No. ARB/01/8, Decision of the ad hoc Committee on the Application for Annulment of the Argentine Republic

Exhibit K: Civil Review Petition No. 101, in Human Rights Case No. 7734-G/2009

Exhibit L: Subpoena and Documents Requested

Exhibit M: List of interrogatories

Exhibit N: Procedural Order No. 1

Exhibit O: Proposed Order on 1782 Application

Exhibit P: Pakistan's Application for Revision of the Award rendered on August 22, 2017

Exhibit Q: Notice of Registration, ICSID

Exhibit R: Notice of the Tribunal's Reconstitution

Exhibit S: *Kardassopoulos v. Georgia*, ICSID Case No. ARB/05/18, Decision of the ad hoc Committee to suspend the Annulment Proceeding (March 21, 2011)

Petitioner, the Islamic Republic of Pakistan ("Pakistan" or "Petitioner"), by and through its counsel, hereby applies *ex parte* for an order pursuant to 28 U.S.C. § 1782 (the "Petition") granting Pakistan leave to serve discovery requests on Arnold & Porter Kaye Scholer LLP ("Arnold & Porter"), located in the District for the District of Columbia (the "District"), and submits the following Amended Memorandum of Law.

## INTRODUCTION

Title 28 U.S.C. § 1782 ("Section 1782") authorizes a district court to order parties within its district to provide evidence in support of foreign proceedings, including criminal investigations. This case falls squarely within the requirements of Section 1782. Pakistan's National Accountability Bureau ("NAB") is currently conducting an investigation into Pakistan's Rental Power Projects Program ("RPP Program"), which was described by a leading international anti-corruption agency as "the biggest corruption fraud in the history of Pakistan." The RPP Program was also the focus of a recent investment arbitration between Karkey Karadeniz Elektrik Uretim A.S. ("Karkey") and Pakistan. *See Karkey Karadeniz Elektrik Uretim A.S. v. Pakistan*, Award, ICSID Case No. ARB/13/1 ("Karkey Arbitration") ("Award") (attached hereto as **Exhibit A**).[1] Arnold & Porter acted as counsel for Karkey during those proceedings, and during this time, Arnold & Porter acquired access to non-privileged information pertaining to Karkey's electronic backup records, also known as the Backup Tapes. These Backup Tapes are a crucial source of information that NAB now seeks in relation to its corruption investigation, and their contents are equally important in Pakistan's three statutory requirements set forth in Section 1782 and further

---

[1] Pakistan is currently challenging the Award rendered in those proceedings based, *inter alia*, on Karkey's corrupt scheme to secure its investment. While Pakistan uses the term "investment" for ease of understanding, Pakistan in no way waives its right in any forum to argue that Karkey's contractual relationship did not amount to an investment under international law.

satisfies the four discretionary factors set forth in *Intel Corporation v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004). Pakistan is therefore entitled to an *ex parte* order granting it leave to serve discovery on Arnold & Porter.

## FACTUAL BACKGROUND

Between 2006 and 2007, Pakistan faced a major energy crisis. To overcome this crisis, Pakistan adopted a policy of power generation through Rental Power Projects. In 2008, Karkey bid for, and eventually was awarded, a contract with Lakhra Power Generation Company Ltd. ("Lakhra") to set up a barge-mounted rental power project near Karachi, Pakistan.

<u>The Supreme Court Corruption Case and the NAB Investigation</u>

While preparations for the project were underway (approximately September 2009), the Supreme Court of Pakistan opened a case into government corruption in connection with the RPP Program. Thereafter, the Supreme Court constituted a three-judge panel to hear the case. In 2010, a third-party audit of the RPP Program revealed "many inconsistencies" in the RPP contracts, noting that changes to the initial request for bids had "diluted the transparency, competition and equal treatment that an [international competitive bidding] process is intended to ensure." Asian Development Bank, *Islamic Republic of Pakistan: Rental Power Review* ¶¶ 7, 11 (January 2010) (**Exhibit B**). Transparency International, a leading international anti-corruption agency, further urged the Supreme Court to "save the country from the biggest corruption fraud in the history of Pakistan." *Letter from Transparency International to the Chief Justice of the Supreme Court of Pakistan*, p. 2 (January 30, 2010) (**Exhibit C**).

On March 30, 2012, the Supreme Court rendered a judgment, concluding that the RPP contracts, including the Karkey contract, had been procured in breach of Pakistani Procurement

Rules and declaring those contracts void *ab initio*.[2] Supreme Court Judgment, Human Rights Case No. 7734-G/2009 & 1003-G/2010, ¶ 84(iii) (March 30, 2012) (**Exhibit D**). The Supreme Court also ordered the National Accountability Bureau ("NAB") to commence an investigation into possible corruption by Karkey and other RPP sponsors, as well as public officials. *Id*. ¶ 84(xi). NAB is an investigatory authority in Pakistan that has brought many corruption cases against public officials, including recent cases against prominent politicians and businesses. It is an independent agency subject only to the control of the courts and limited intervention by the President of Pakistan. Notably, NAB has shown its willingness and ability to challenge even the most powerful officials in Pakistan. As a result of the ongoing investigation, Karkey's bank accounts were frozen and a "caution" was placed on all of its vessels, essentially freezing them until the NAB inquiry was complete. *Letter from NAB to the Maritime Security Agency* (April 2, 2012) (**Exhibit E**).

In September 2012, Karkey agreed to pay $17.2 million in exchange for the unfreezing of its vessels and a declaration that Karkey was not liable for corruption. *Deed between the National Accountability Bureau and Karkey Karadeniz* (September 7, 2012) [confidential] (**Exhibit F**). The Supreme Court declined to approve the settlement however, and instead recalculated a more appropriate amount and directed NAB to recover $120 million from Karkey. Supreme Court Order, C.M.A Nos. 3685-3686 in Human Rights Case No. 7734-G/2009 (November 26, 2012) (**Exhibit G**). Thereafter, the Supreme Court ordered NAB to pursue criminal liability and to arrest persons involved in the RPP Program. Supreme Court Order, C.M.A Nos. 3685-3686 in Human Rights

---

[2] The Supreme Court's judgment is currently on appeal. Civil Review Petition No. 101, in Human Rights Case No. 7734-G/2009 (April 24, 2012) (**Exhibit K**).

Case No. 7734-G/2009 (January 11, 2013) (**Exhibit H**). NAB's investigation and pursuit of criminal liability remains ongoing.

<u>The Karkey-Pakistan Arbitration</u>

Karkey commenced an ICSID arbitration against Pakistan on January 16, 2013, pursuant to the Agreement Between the Islamic Republic of Pakistan and the Republic of Turkey concerning Reciprocal Promotion and Protection of Investments ("Pakistan-Turkey BIT" or "BIT"), claiming that Pakistan had breached the BIT in various ways. Award, ¶¶ 1, 5, 25. In the context of the arbitration, Pakistan discovered extensive evidence of corruption, including the existence of the Backup Tapes, which contain copies of emails and other documents from a period of January 1, 2008 to April 30, 2010.

The Backup Tapes relate to a crucial time in Karkey's involvement in the RPP Program. The relevant time period includes the award of the contracts in Karkey's favor, and the process by which Karkey setup the alleged scheme to bribe Pakistani officials. Karkey has not disputed the existence of these back-up tapes. And while Karkey has never detailed the exact contents of the back-up tapes, Arnold & Porter affirmed that it had access to them. Ultimately, the arbitral tribunal that heard the Pakistan-Karkey arbitration refused to compel Karkey to produce the back-up tapes. The arbitral tribunal found that the request was made too late in the process, but it did not comment further on the content of the Backup Tapes or Pakistan's ability to seek their production in other proceedings.[3]

---

[3] To be clear, Pakistan's Application is limited to the emails and other electronic documents maintained on the Backup Tapes related the RPP Program, which is the focus of NAB's investigation. *See* **Exhibits L and M**. That being said, Pakistan cannot limit itself to the Backup Tapes.

On August 22, 2017, the arbitral tribunal issued its Award in favor of Karkey. On October 27, 2017, Pakistan submitted a timely Request for Annulment ("Request") (**Exhibit I**) of the Award pursuant to Article 52 of the Convention on the Settlement of Investment Disputes between States and Nationals of other States ("ICSID Convention"). Pursuant to Article 52(3) of the ICSID Convention, an *ad hoc* Committee of three individuals—none of whom participated in the underlying arbitration—have been appointed to consider Pakistan's Request ("Annulment Committee"). Pakistan claims in the Request that the Tribunal lacked jurisdiction based on Karkey's corrupt scheme to secure the investment. Relatedly, Pakistan claims that it was not afforded its right to effectively argue the issue of corruption, which as the Tribunal even noted, "goes to the very heart of [the] Tribunal's jurisdiction." Award ¶ 528.

Revision Proceedings

On January 7, 2019, Pakistan submitted a timely Application for the Revision of the Award ("Revision Application") pursuant to Article 51 of the ICSID Convention (**Exhibit P**).[4] ICSID registered the Revision Application on February 6, 2019 and imposed a provisional stay on all enforcement of the Award (**Exhibit Q**). The following day, February 7, 2019, ICISD reconstituted the original Tribunal to decide the Application (**Exhibit R**).

The Revision Application brings new evidence of the bribery scheme mentioned above. Specifically, the Application and the evidence detail a series of offshore and undisclosed payments made to Karkey's in-country representative Mr. Raja Babar Ali Zulqarnain. The payments were made in 2009 and 2010, the same period covered by the Backup Tapes. Mr. Zulqarnain received approximately five million dollars into an account held by his shell company, Leadburn Global

---

[4] Included in Exhibit P are Pakistan's Revision Application, a follow-on letter to the Revision Application and the Affidavit of Mr. Ahmad Irfan Islam, Head of the International Dispute Unit for the Office of the Attorney General for Pakistan.

Limited, which he then transferred into his personal bank accounts in Dubai and Pakistan. The payment receipts make specific reference Karkey and its RPP contract.

Both Karkey and Mr. Zulqarnain previously denied any knowledge of such payments. In the original arbitration, Pakistan alleged that Mr. Zulqarnain facilitated the payment scheme, but it had no evidence of the existence of Leadburn, Mr. Zulqarnain's affiliation with the company, or any payments referencing Karkey. On that basis, the Tribunal ruled against Pakistan case on corruption. Now, in light of the new evidence, the Tribunal is set to be reconvened to reconsider the issue.[5]

## LEGAL STANDARD

Section 1782 permits U.S. courts to grant discovery in aid of foreign and international legal proceedings. The statute provides, in relevant part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

28 U.S.C. § 1782(a) (2016).

Section 1782 applies broadly in the context of international litigation. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247-48 (2004) (noting that over the years Congress has "substantially broadened the scope of assistance federal courts could provide for foreign proceedings"). The district court must first consider whether it has the authority to grant the

---

[5] As to the facts of the Revision Application, Pakistan relies on those facts, as incorporated in Exhibit P. The brief narrative contained herein only gives an overview of the corruption that Karkey and its agent engaged in.

discovery request and then whether it should exercise its discretion to do so. *In re Barnwell Enterprises Ltd.*, 2017 WL 2992074, at *4 (D.D.C. July 17, 2017) (citing *Lazaridis v. International Centre for Missing and Exploited Children, Inc.*, 760 F. Supp. 2d 109, 112 (D.D.C. 2011)).

## ARGUMENT

**A.      This Court has the statutory authority to grant Pakistan's discovery requests**

Three statutory conditions must be met before a court may order discovery pursuant to Section 1782(a): (1) the party from whom discovery is sought must "reside" or be "found" in the district in which the district court sits; (2) the request for discovery must be "for use in a proceeding in a foreign or international tribunal"; and (3) the applicant must be a foreign or international tribunal, or an "interested person" in the foreign proceedings. 28 U.S.C. § 1782(a); *see also In re Barnwell*, 2017 WL 2992074, at *4. Pakistan easily meets each of these requirements.

*i.      Arnold & Porter is found within the District.*

Arnold & Porter is a global law firm with an office located at 601 Massachusetts Ave., NW, Washington, DC 20001. The firm's DC office is "one of the oldest and largest in the firm and includes representation from all of the firm's 40 practices." *Washington, DC*, ARNOLD & PORTER KAYE SCHOLER, https://www.apks.com/en/offices/washington-dc (last visited August 7, 2018). The firm's presence in the District of Columbia, as well as the daily practice of law by its partners in the District, demonstrates that Arnold & Porter may be "found" in the District for purposes of Section 1782. *See In re Republic of Kazakhstan for an Order Directing Discovery from Clyde & Co. LLP Pursuant to 28 U.S.C. § 1782*, 110 F. Supp. 512, 515 (S.D.N.Y. 2015).

*ii.      The requested discovery is for "use in a foreign proceeding."*

There is no question that the ongoing arbitration proceedings (both annulment and revision) and the NAB investigation are considered "foreign proceedings" for purposes of Section 1782(a). The U.S. Supreme Court has held that "judicial assistance [is] available 'whether the foreign or

international proceeding *or investigation* is of a criminal, civil, administrative, or other nature.'" *Intel*, 542 U.S. at 259 (internal citation omitted; emphasis in original). Moreover, the burden to show that the discovery is "for use" in a foreign proceeding is generally *de minimis*, requiring only that the discovery be of some relevance to the proceedings. *In re Veiga*, 746 F. Supp. 2d 8, 18-19 (D.D.C. 2010) ("Relevancy…encompasses any material that bears on, or that reasonably leads to other matters that could bear on, any issue that is or may be in the case.") (internal quotations and citations omitted). Information leading to Karkey's electronic backup files, which allegedly contain evidence of Karkey's corruption, certainly satisfy the "for use" requirement.

As to the ICSID proceedings, this Court and others have held that BIT proceedings are considered "foreign proceedings" for purposes of Section 1782(a). *In re Veiga*, 746 F. Supp. at 22-23; *see also In re Application of Chevron Corp.*, 709 F. Supp. 2d 283, 291 (S.D.N.Y. 2010) (holding that international arbitral bodies operating under UNCITRAL rules constitute "foreign tribunals" for purposes of Section 1782). Pakistan is challenging the underlying BIT proceedings for lack of jurisdiction and failure of due process related to Pakistan's allegations of corruption. The Annulment Committee has expressly allowed Pakistan to present new evidence in support of its annulment request. Procedural Order No. 1, para. 16. 1 (**Exhibit N**). Moreover, the purpose of the revision proceedings is to present new evidence that will have a decisive effect on the award. *Kardassopoulos v. Georgia*, ICSID Case No. ARB/05/18, Decision of the ad hoc Committee to suspend the Annulment Proceeding (March 21, 2011), ¶ 12 (**Exhibit S**). To that end, Pakistan seeks information from Arnold & Porter regarding records or other evidence of Karkey's corruption. As the Tribunal recognized, "[i]f genuine, those [records] would be evidence that Pakistan has been the victim of a large-scale fraud by Karkey (and others) which goes to the very

heart of this Tribunal's jurisdiction." Award ¶ 528. Therefore, Pakistan's Petition, as it relates to the ICSID proceedings, also satisfies the "for use in a foreign proceeding" requirement.

As to the NAB investigation, this is perhaps the clearest example of discovery for use in a foreign proceeding. A request by a government's prosecutorial agency fits the criteria of the "for use" requirement. *See, e.g.*, *In re Letter of Request from Crown Prosecution Service of United Kingdom*, 870 F.2d 686, 691 (D.C. Cir. 1989). Moreover, in the seminal Supreme Court decision on Section 1782, the Court granted discovery that was to be submitted to the European Commission as an evidence-gathering body. *Intel*, 542 U.S. at 258. NAB is a Pakistani governmental organization charged with the investigation and prosecution of corruption, corrupt practices, kickbacks and other wrongful commissions. *About Us*, NATIONAL ACCOUNTABILITY BUREAU, http://www.nab.gov.pk/home/introduction.asp (last visited August 7, 2018). The Supreme Court of Pakistan has ordered NAB to prosecute those involved in the RPP corruption scandal (*see* Exhibit H). The investigation is active and ongoing, meeting all requirements imposed by Section 1782.

Finally, the discovery sought must be to give testimony or a statement or to produce a document or other thing. 28 U.S.C. § 1782(a). This can include deposition, interrogatories, or requests for documents that accompany a subpoena. *See, e.g.*, *In re Application of Chevron Corp.*, 709 F. Supp. 2d at 161. In this regard, Pakistan has attached the proposed interrogatories and documents sought. At this time, Pakistan does not anticipate needing deposition.

      iii.    *Pakistan is an interested person in the ICSID proceedings and NAB investigation*

Because Pakistan is a party to both the investigation and the two proceedings before ICSID, it is therefore an "interested person" within the meaning of Section 1782. *Intel*, 542 U.S. at 256 ("No doubt litigants are included among, and may be the most common example of, the 'interested

person[s]' who may invoke § 1782."); *see also In re Letter of Request from Crown Prosecution Service of United Kingdom*, 870 F.2d 686, 691 (D.C. Cir. 1989) (accepting the Crown Prosecution Service as an "interested person" for purposes of Section 1782).

    **B.**    **This Court should exercise its discretion to grant Pakistan's discovery request**

    Once the statutory requirements are met, the court must decide whether to exercise its discretion "in light of the twin aims of the statute to (1) provide efficient means of assistance to participants in international litigation and (2) encourage foreign countries by example to provide similar means of assistance to our courts." *In re Barnwell*, 2017 WL 2992074, at *4. In making this determination, four factors bear consideration: (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal and the receptivity of the foreign tribunal; (3) whether the application conceals an attempt to circumvent foreign proof-gathering restrictions or other policies; and (4) whether the discovery sought is unduly intrusive or burdensome. *In re Veiga*, 746 F. Supp. 2d at 17 (citing *Intel*, 542 U.S. at 264-65).

        *i.*    *Arnold & Porter is not a participant in the foreign proceedings.*

    Non-participants in foreign proceedings may be outside the foreign tribunal's jurisdictional reach; and thus their evidence may be otherwise unobtainable absent Section 1782(a). *Intel*, 542 U.S. at 244. Arnold & Porter only acted as counsel to Karkey during the underlying ICSID arbitration. It was not a party to that arbitration. Nor is Arnold & Porter under investigation by the NAB. Thus, the Pakistani Courts and the ICSID Tribunal do not have jurisdiction over Arnold & Porter. *See also In re Veiga*, 746 F. Supp. 2d at 23 (noting that counsel is not a participant to the proceedings). Because Arnold and Porter is not a participant to any of the foreign proceedings, this factor weighs in favor of granting the Petition.

ii.     *NAB, the* *Annulment* *Committee* *and the Tribunal* *are receptive to this Court's assistance*

A foreign tribunal's willingness to accept evidence obtained through the Section 1782 process weighs in favor of granting the petition. *See In re Veiga*, 746 F. Supp. 2d at 23-24 (requiring a party opposing the Section 1782 application to provide "authoritative proof" that the foreign tribunal would reject the discovery). In the absence of "authoritative proof," this factor weighs in favor of granting the Petition.

NAB has expressly indicated that it is receptive to this Court's assistance. NAB has authorized this Petition, and there is nothing to indicate that it would reject the discovery sought. In addition, the nature of the foreign proceedings weighs in favor of granting the Petition. With regards to the NAB investigation, both the United States and Pakistan have an interest in enforcing their anti-corruption laws through criminal prosecution.

In the context of the BIT arbitration, the result should be the same. District courts have consistently recognized that BIT arbitrations do not reject Section 1782 assistance. *See, e.g.*, *id*. at 24; *In re Application of Chevron Corp.*, 709 F. Supp. 2d at 292 (accepting that the BIT arbitration would not reject the discovery). Pakistan's claims on annulment are directly related to the Tribunal's treatment of corruption in the underlying arbitration. Pakistan is not raising the corruption issue for the first time. Pakistan is arguing rather that the Tribunal in the underlying arbitration violated a fundamental rule of procedure by failing to order "the production or the review of [the Backup Tapes], which undeniably exist, to justify its reliance on [Karkey's] bare assertion that there were no responsive document…." Request for Annulment (**Exhibit I**), ¶ 88. Article 52(1)(d) of the ICSID Convention expressly allows Pakistan to make such an argument.

In addition, Pakistan is arguing that the Tribunal lacked subject-matter jurisdiction due to Karkey's fraudulent conduct. *See* Request for Annulment (**Exhibit I**), § 5.A. Article 52(1)(b) of

the ICSID Convention expressly permits Pakistan to make such a claim.[6] *CMS Gas Transmission Company v. Argentine Republic*, ICSID Case No. ARB/01/8, Decision of the ad hoc Committee on the Application for Annulment of the Argentine Republic, para. 47 (Sept. 25, 2007) (**Exhibit J**) ("Clearly, an arbitral tribunal's lack of jurisdiction, whether said to be partial or total, necessarily comes within the scope of an "excess of powers" under Article 52(1)(b).").[7]

As for revision, the case is even simpler. ICSID has registered the Revision Application, which opens the proceedings for the submission of new evidence. The Tribunal has already accepted a portion of this new evidence, and any additional evidence found on the Backup Tapes would obviously be relevant to its further deliberations. Although the Tribunal previously denied Pakistan's request for the Backup Tapes, this is no indication that the evidence would be rejected for purposes of revision. The request was denied on procedural grounds before the Tribunal ever had an opportunity to assess the evidence. Now the Tribunal has been reconvened to look specifically at the issue of corruption, making the Backup Tapes all the more relevant.

      iii.    *Pakistan is not circumventing the foreign tribunal's proof gathering restrictions.*

Section 1782(a) does not incorporate an exhaustion requirement. *In re Veiga*, 746 F. Supp. 2d at 24. Pakistan is not therefore required to first seek production of the requested discovery from the Pakistani courts or the ICSID Annulment Committee.[8] Moreover, the Supreme Court of

---

[6] In a similar fashion, "a challenge to federal subject-matter jurisdiction is not waivable and may be raised at any point in the proceedings." *Coon v. Wood*, 160 F. Supp. 3d 246, 249 (D.D.C. 2016) (citing Fed. R. Civ. P. 12(h)(3)).

[7] This is not an instance where the court would "interfere with the parties' bargained-for expectations concerning the arbitration process." *In re Application of Caratube Int'l Oil Co., LLP*, 730 F. Supp. 2d 101, 106 (D.D.C. 2010). Unlike in *Caratube*, the bi-lateral investment treaty at issue in the Pakistan-Karkey arbitration grants the investor, or in this case Karkey, the unilateral right to choose the arbitral forum. *See* Pakistan-Turkey BIT, art. 2.

[8] Pakistan admits that it previously sought disclosure of these records during the underlying arbitration proceedings. The Tribunal denied Pakistan's request based on Karkey's unsupported

Pakistan has instructed NAB to pursue criminal charges against those liable for corruption in relation to the RPP Program. This proceeding is a part of complying with that order, making it an important element of the attempts of the foreign tribunal (in this case the Pakistan Supreme Court) to obtain the proof sought herein.

As to the BIT arbitration, there is no bar to the discovery sought by Pakistan. Once the discovery is taken, the Annulment Committee and the original Tribunal will have to independently determine any objections as to admissibility that Karkey may assert, but this is merely part of the evidentiary process, not an attempt to circumvent it.

> iv.    *The discovery is not unduly intrusive or burdensome.*

Pakistan has limited its discovery requests to information regarding the Backup Tapes on which Karkey had claimed that its electronic records were stored for the period up to April 2010 (the same period during which Karkey's alleged corrupt scheme took place). Award ¶ 325. This is a narrow time frame, and the discovery requests only venture outside this time frame when seeking to confirm the custodians of the documents and those that have accessed the documents. This is not a fishing expedition into Karkey's general finances or activities outside of the corruption allegations.

Karkey relied on the Backup Tapes in other phases of the underlying arbitration and cannot deny their existence. *See id*. Given the fact that these tapes were available to Arnold & Porter during the arbitration, granting the Petition would not be unduly burdensome. Indeed, Pakistan has previously offered to pay for the restoration and copying of the back-up tapes, an offer that it

---

assertion that the records contained no evidence of corruption. The Tribunal however never ordered that these backup records be reviewed, despite Pakistan's offer to bear the entire cost of such a review. Indeed, the Tribunal's blanket denial of Pakistan's request is a ground on which Pakistan is seeking to annul the Tribunal's award for lack of due process.

renews with this Petition. Arnold & Porter has no privacy right in the back-up tapes and only has to provide access to them—a simple task in this era of electronic discovery. Pakistan is willing to agree to any reasonable search terms that will aid in the swift production of the documents. Finally, Pakistan is more than willing to respect any binding, legal privilege, as long as such privilege is one already recognized by this Court and is accompanied by a detailed and appropriate privilege log.

But Pakistan must insist that all proper steps are taken to produce the documents and information. If Arnold & Porter now denies that it has access to the discovery or otherwise attempts to thwart their production, then Pakistan will request depositions and other forms of permissible discovery to ascertain the location of the documents and information and their prompt production. The administration of justice requires nothing less.

## CONCLUSION

For the reasons stated herein, Pakistan respectfully requests that the Court

(1) Grant Pakistan's Petition for an Order Permitting Discovery Pursuant to 28 U.S.C. § 1782;

(2) Authorize Pakistan to issue the subpoena attached as Exhibit L;

(3) Authorize Pakistan to send the request for interrogatories attached as Exhibit M;

(4) Reserve, for the time being, the power to order the deposition of any records custodian or other individual necessary to determine the location of the back-up tapes, as well as the ability to authorize Pakistan to seek any further relief as necessary; and

(5) Grant such further relief that this court considers proper.

Respectfully submitted,

/s/___Quinn Smith_____
Quinn Smith

17

DCD Bar No. 00027
quinn.smith@gstllp.com
Katherine A. Sanoja
DC Bar No. 1019983
*Admitted pro hac vice*
katherine.sanoja@gstllp.com
GST LLP
1111 Brickell Ave, Suite 2715
Miami, FL 33131
Tel: (305) 856-7723
Fax: (786) 220-8265

Gary J. Shaw
DC Bar No. 1018056
gary.shaw@gstllp.com
GST LLP
1875 I Street NW, Floor 5
Washington DC 20006
Tel: (202) 681-0529
Fax: (786) 220-8265